IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETEDGE, INC., <br><br> Plaintiff <br><br> v. <br><br> THE KYJEN COMPANY, INC., <br><br> Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Civil Action No. 04 10807 MEL

| | |
|---|---|
| THE KYJEN COMPANY, INC., <br><br> Counterclaim Plaintiff <br><br> v. <br><br> PETEDGE, INC., <br><br> Counterclaim Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## ANSWER AND COUNTERCLAIMS

Defendant The Kyjen Company, Inc. ("Kyjen") hereby responds to the Complaint of Plaintiff Pet Edge, Inc. ("Pet Edge") as follows:

1.    Kyjen admits that Pet Edge is a supplier of pet toys and pet accessories. Kyjen has insufficient information to admit or deny the remaining allegations of Paragraph 1 of the Complaint and on that basis denies them.

2.    Kyjen has insufficient information to admit or deny the allegations of Paragraph 2 of the Complaint and on that basis denies them.

3.    Kyjen has insufficient information to admit or deny the allegations of Paragraph 3 of the Complaint and on that basis denies them.

4.    Kyjen admits that it is a California corporation with a business mailing address of P.O. Box 793, Huntington Beach, CA 92648.  Kyjen admits that it supplies distributors with stuffed animal toys and other toys, and that many of these toys are manufactured at Kyjen's direction overseas.  Kyjen admits that it sells products to large pet stores.  Kyjen denies the remaining allegations of Paragraph 4 of the Complaint.

5.    Kyjen admits that it contends Pet Edge is engaged in copyright infringement, trade dress infringement, trademark infringement, and unfair competition, and that it so informed Pet Edge.  Kyjen denies the remaining allegations of Paragraph 5 of the Complaint.

6.    Kyjen admits that Pet Edge has denied Kyjen's contentions and allegations in its Complaint.  Kyjen admits that its filing of its counterclaims herein create an actual, justiciable case or controversy between the parties.  Kyjen denies the remaining allegations of Paragraph 6 of the Complaint.

7.    Kyjen admits that this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338. Kyjen denies that 28 U.S.C. §§ 2201-02 are jurisdictional statutes.

8.    Kyjen admits that this Court has jurisdiction over Kyjen's pendent state law counterclaims under 28 U.S.C. § 1367.

9.    Kyjen admits that it conducts business in the Commonwealth of Massachusetts and supplies products to the Commonwealth of Massachusetts.  Kyjen denies the remaining allegations of Paragraph 9 of the Complaint.

10.    Kyjen admits the allegations of Paragraph 10 of the Complaint.

11.     Kyjen admits that, in a letter to Pet Edge, it alleged infringement by Pet Edge based upon the products depicted in the left column of Paragraph 11 of the Complaint. Kyjen denies that the right column fully and accurately depicts the products which are the source of Kyjen's rights and thus Kyjen denies the remaining allegations of Paragraph 11 of the Complaint.

12.     Kyjen denies the allegations of Paragraph 12 of the Complaint.

13.     Kyjen denies the allegations of Paragraph 13 of the Complaint.

14.     Kyjen denies the allegations of Paragraph 14 of the Complaint.

15.     Kyjen denies the allegations of Paragraph 15 of the Complaint.

16.     Kyjen denies the allegations of Paragraph 16 of the Complaint.

17.     Kyjen denies the allegations of Paragraph 17 of the Complaint.

18.     Kyjen denies the allegations of Paragraph 18 of the Complaint.

19.     Kyjen denies the allegations of Paragraph 19 of the Complaint.

20.     Kyjen denies the allegations of Paragraph 20 of the Complaint.

21.     Kyjen denies the allegations of Paragraph 21 of the Complaint.

22.     Kyjen incorporates by reference its responses to Paragraphs 1-21 of the Complaint as if set forth fully herein.

23.     Kyjen denies the allegations of Paragraph 23 of the Complaint.

24.     Kyjen incorporates by reference its responses to Paragraphs 1-21 of the Complaint as if set forth fully herein.

25.     Kyjen denies the allegations of Paragraph 25 of the Complaint.

26.     Kyjen incorporates by reference its responses to Paragraphs 1-21 of the Complaint as if set forth fully herein.

27.    Kyjen denies the allegations of Paragraph 27 of the Complaint.

28.    Kyjen incorporates by reference its responses to Paragraphs 1-21 of the Complaint as if set forth fully herein.

29.    Kyjen denies the allegations of Paragraph 29 of the Complaint.

## COUNTERCLAIMS AND DEMAND FOR JURY TRIAL

Counterclaim Plaintiff The Kyjen Company, Inc. ("Kyjen") hereby brings the following counterclaims against Counterclaim Defendant PetEdge, Inc. ("Pet Edge").

### Jurisdiction and Venue

1.    This is an action for copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. § 101, et seq., for trademark and trade dress infringement arising under the Lanham Act, 15 U.S.C. § 1051, et seq., and for unfair competition arising under California and Massachusetts state law.

2.    This Court has jurisdiction under 28 U.S.C. §§ 1331, 1338 & 1367.  In addition, jurisdiction is proper under 28 U.S.C. § 1332 because Kyjen resides in California, Pet Edge resides in Massachusetts, and the amount in controversy exceeds $75,000.

3.    Venue is proper in this Court under 28 U.S.C. §§ 1391(b), 1391(c), and 1400(a).

### The Parties

4.    Kyjen is a California corporation having its principal place of business in Huntington Beach, California.

5.    Kyjen is informed and believes that Pet Edge is a Massachusetts corporation having its principal place of business 239 Newbury Port Turnpike, P.O. Box 128, Topsfield, Massachusetts 01983.

4

6.     Kyjen is in the business of designing and selling plush toys, designed primarily for use by pets, and other pet accessories.

7.     Pet Edge is also in the business of selling plush toys for use by pets and other pet accessories.

## First Claim for Relief

### (Copyright Infringement – Coral the Crab)

8.     Kyjen realleges each and every allegation set forth in Paragraphs 1-7 of this Counterclaim, as if set forth fully herein.

9.     Jennifer Hansen is the Vice President and a co-founder of Kyjen. Ms. Hansen, on behalf of Kyjen, designed a plush toy entitled Coral the Crab as her own original work of authorship.

10.     Kyjen and Ms. Hansen have complied with the copyright laws of the United States and have secured copyrights and the exclusive rights and privileges offered by such privileges in Coral the Crab. On April 11, 2000, the copyright in Coral the Crab registered with the United States Copyright Office as Registration No. VA 999-576. A true and correct copy of the Certificate of Registration is attached hereto as Exhibit 1.

11.     Kyjen is the owner by assignment of the copyright in Coral the Crab and its registration.

12.     Since a time prior to the acts of Pet Edge, Kyjen has continuously and extensively marketed its Coral the Crab toy throughout the United States. In addition, Pet Edge has previously marketed Kyjen's Coral the Crab toy. Thus, Pet Edge had access to Coral the Crab.

13.    Pet Edge is marketing and selling a plush toy under the name Zanies Floppy Crab. This toy is substantially similar to the Coral the Crab toy. Kyjen is informed and believes that Pet Edge copied Kyjen's Coral the Crab toy to create its Zanies Floppy Crab toys.

14.    Pet Edge's copying was without authorization from Kyjen.

15.    Kyjen is informed and believes that Pet Edge's conduct has been willful, exhibiting clear disregard for the rights of Kyjen.

16.    Pet Edge's infringement has caused damage and irreparable injury to Kyjen, and these acts of infringement will result in further damage and irreparable injury to Kyjen if Pet Edge is not enjoined by this Court.

## Second Claim for Relief

### (Copyright Infringement – Gertrude the Goose)

17.    Kyjen realleges each and every allegation set forth in Paragraphs 1-7 and 9 of this Counterclaim, as if set forth fully herein.

18.    Ms. Hansen, on behalf of Kyjen, designed a plush toy entitled Gertride the Goose as her own original work of authorship.

19.    Kyjen and Ms. Hansen have complied with the copyright laws of the United States and have secured copyrights and the exclusive rights and privileges offered by such privileges in Gertrude the Goose. On October 17, 2000, the copyright in Gertrude the Goose registered with the United States Copyright Office as Registration No. VA 1-015-297. A true and correct copy of the Certificate of Registration is attached hereto as Exhibit 2.

20.    Kyjen is the owner by assignment of the copyright in Gertrude the Goose and its registration.

21.    Since a time prior to the acts of Pet Edge, Kyjen has continuously and extensively marketed its Gertrude the Goose toy throughout the United States. In addition, Pet Edge has previously marketed Kyjen's Gertrude the Goose toy. Thus, Pet Edge had access to Gertrude the Goose.

22.    Pet Edge is marketing and selling a plush toy under the name Zanies Berber Duck. This toy is substantially similar to the Gertrude the Goose toy. Kyjen is informed and believes that Pet Edge copied Kyjen's Gertrude the Goose toy to create its Zanies Berber Duck toys.

23.    Pet Edge's copying was without authorization from Kyjen.

24.    Kyjen is informed and believes that Pet Edge's conduct has been willful, exhibiting clear disregard for the rights of Kyjen.

25.    Pet Edge's infringement has caused damage and irreparable injury to Kyjen, and these acts of infringement will result in further damage and irreparable injury to Kyjen if Pet Edge is not enjoined by this Court.

### Third Claim for Relief

### (Copyright Infringement – Bungee Bone)

26.    Kyjen realleges each and every allegation set forth in Paragraphs 1-7 and 9 of this Counterclaim, as if set forth fully herein.

27.    Ms. Hansen, on behalf of Kyjen, designed a plush toy entitled Bungee Bone as her own original work of authorship.

28.    Kyjen and Ms. Hansen have complied with the copyright laws of the United States and have secured copyrights and the exclusive rights and privileges offered by such privileges in Bungee Bone. On June 16, 2004, the copyright in Bungee Bone registered with the

United States Copyright Office as Registration No. VA 1-248-235. A true and correct copy of the Certificate of Registration is attached hereto as Exhibit 3.

29.    Ms. Hansen created Bungee Bone as a work for hire for Kyjen, and Kyjen is the owner of the copyright in Bungee and its registration.

30.    Since a time prior to the acts of Pet Edge, Kyjen has continuously and extensively marketed its Bungee Bone toy throughout the United States. In addition, Pet Edge has previously marketed Kyjen's Bungee Bone toy. Thus, Pet Edge had access to the Bungee Bone toy.

31.    Pet Edge is marketing and selling a plush toy under the name Bungee Bone, the same name used by Kyjen. This toy is substantially similar to Kyjen's Bungee Bone toy. Kyjen is informed and believes that Pet Edge copied Kyjen's Bungee Bone toy to create its Bungee Bone toys.

32.    Pet Edge's copying was without authorization from Kyjen.

33.    Kyjen is informed and believes that Pet Edge's conduct has been willful, exhibiting clear disregard for the rights of Kyjen.

34.    Pet Edge's infringement has caused damage and irreparable injury to Kyjen, and these acts of infringement will result in further damage and irreparable injury to Kyjen if Pet Edge is not enjoined by this Court.

### Fourth Claim for Relief

### (Copyright Infringement – Tug 'N Ring Santa)

35.    Kyjen realleges each and every allegation set forth in Paragraphs 1-7 and 9 of this Counterclaim, as if set forth fully herein.

8

36.    Ms. Hansen, on behalf of Kyjen, designed a plush toy entitled Tug 'N Ring Santa as her own original work of authorship.

37.    Kyjen and Ms. Hansen have complied with the copyright laws of the United States and have secured copyrights and the exclusive rights and privileges offered by such privileges in Tug 'N Ring Santa.  On June 16, 2004, the copyright in Tug 'N Ring Santa registered with the United States Copyright Office as Registration No. VA 1-248-236.  A true and correct copy of the Certificate of Registration is attached hereto as Exhibit 4.

38.    Ms. Hansen created Tug 'N Ring Santa as a work for hire for Kyjen, and Kyjen is the owner of the copyright in Bungee and its registration.

39.    Since a time prior to the acts of Pet Edge, Kyjen has continuously and extensively marketed its Tug 'N Ring Santa toy throughout the United States.  In addition, Pet Edge has previously marketed Kyjen's Tug 'N Ring Santa toy.  Thus, Pet Edge had access to the Tug 'N Ring Santa toy.

40.    Pet Edge is marketing and selling a plush toy under the name Holiday Ring Toy Santa.  This toy is substantially similar to Kyjen's Tug 'N Ring Santa toy.  Kyjen is informed and believes that Pet Edge copied Kyjen's Tug 'N Ring Santa toy to create its Holiday Ring Toy Santa toys.

41.    Pet Edge's copying was without authorization from Kyjen.

42.    Kyjen is informed and believes that Pet Edge's conduct has been willful, exhibiting clear disregard for the rights of Kyjen.  Pet Edge's infringement has caused damage and irreparable injury to Kyjen, and these acts of infringement will result in further damage and irreparable injury to Kyjen if Pet Edge is not enjoined by this Court.

## Fifth Claim for Relief

### (Trademark Infringement)

43.    Kyjen realleges each and every allegation set forth in Paragraphs 1-7 and 9 of this Counterclaim, as if set forth fully herein.

44.    Since a time before the conduct of Pet Edge, Kyjen has marketed in interstate commerce an entire line of pet toys under the trademarks "Bungee" and "Bungees." These toys include Kyjen's Bungee Bone toy and many others.

45.    Kyjen's Bungee and Bungees trademarks are inherently distinctive. In addition, consumers and those in the pet trade have come to associate the Bungee and Bungees names uniquely with Kyjen. That is, the Bungee and Bungees names have acquired secondary meaning and are valuable trademarks of Kyjen.

46.    The United States District Court for the Central District of California has upheld Kyjen's trademark rights in its Bungee trademark. See Kyjen Co., Inc. v. Vo-Toys, Inc., 223 F.Supp.2d 1065, 1070-71 (C.D. Cal. 2002).

47.    Long after Kyjen adopted and first used the Bungee and Bungees trademarks, Pet Edge began to use the mark "Bungee" in interstate commerce on toys that compete directly with Kyjen's toys. These toys include Pet Edge's Bungee Bone toys and Pet Edges Bungee Geckos toys.

48.    Pet Edge's Bungee trademark is identical to Kyjen's Bungee trademark and used on the same type of goods. Accordingly, confusion between the two marks is likely and, in fact, inevitable. Consumers and those in the pet trade are likely to believe mistakenly that Kyjen is the source of Pet Edge's Bungee toys, or that Kyjen sponsors, endorses, or is otherwise affiliated with those toys.

49.     Pet Edge's conduct is not authorized by Kyjen.

50.     At considerable expense, Kyjen has established a strong reputation in the marketplace and in the trade for high quality products. That reputation is symbolized by and associated with Kyjen's Bungee and Bungees trademarks.

51.     Pet Edge's Bungee toys are of an inferior quality compared to Kyjen's Bungee toys. Kyjen's reputation for high quality pet products is thus threatened by Pet Edge's sales and the consumer confusion created by those sales.

52.     Kyjen is informed and believes that Pet Edge deliberately copied Kyjen's Bungee trademark, and that its infringement is willful.

53.     Pet Edge's conduct constitutes a violation of the Lanham Act, 15 U.S.C. § 1051, et seq.

54.     Pet Edge's infringement has caused damage to Kyjen. In addition, Pet Edge's infringement has caused, and will continue to cause, irreparable harm to Kyjen, including continued harm to Kyjen's reputation, unless enjoined by this Court.

**Sixth Claim for Relief**

**(Trade Dress Infringement – Ring Design Toys)**

55.     Kyjen realleges each and every allegation set forth in Paragraphs 1-7 and 9 of this Counterclaim, as if set forth fully herein.

56.     Kyjen has designed and marketed an entire series of distinctive toys, known as the "Tug 'N Ring" series of toys. Each of these toys is in the form of a person, animal, or other character which has a ring or donut shape in place of the character's body, two feet without legs, and an absence of hands and arms. The Tug 'N Ring Santa toy mentioned above is just one of these many toys.

57.    The appearance of these toys is distinctive and non-functional.  Because of the distinctive appearances and configurations of these toys, consumers and those in the pet trade have come to associate animal toys and character toys having a ring-shaped body, two feet, and no hands uniquely with Kyjen.  This combination of features has thus acquired secondary meaning and constitutes the valuable trade dress of Kyjen.

58.    At considerable expense, Kyjen has established a strong reputation in the marketplace and in the trade for high quality products.  That reputation is symbolized by and associated with Kyjen's trade dress.

59.    Pet Edge is manufacturing, marketing, distributing, and selling toys which infringe Kyjen's trade dress in the ring design.  These infringing toys include Pet Edge's Holiday Ring Toy Santa, Holiday Ring Toy Bear, Holiday Ring Toy Snowman, and Holiday Ring Toy Reindeer.

60.    Because Pet Edge has copied Kyjen's trade dress, consumers and those in the trade are likely to believe mistakenly that Kyjen is the source of the infringing toys, or that Kyjen sponsors, endorses, or is otherwise affiliated with these toys.

61.    Pet Edge's conduct is not authorized by Kyjen.

62.    Pet Edge's infringing toys are of an inferior quality compared to Kyjen's toys.  Kyjen's reputation for high quality pet products is thus threatened by Pet Edge's sales and the consumer confusion created by those sales.

63.    Kyjen is informed and believes that Pet Edge deliberately copied Kyjen's trade dress and that its infringement is willful.

64.    Pet Edge's conduct constitutes a violation of the Lanham Act, 15 U.S.C. § 1051, et seq.

65.    Pet Edge's infringement has caused damage to Kyjen.  In addition, Pet Edge's infringement has caused, and will continue to cause, irreparable harm to Kyjen, including continued harm to Kyjen's reputation, unless enjoined by this Court.

### Seventh Claim for Relief

### (Trade Dress Infringement – Tennis Toys)

66.    Kyjen realleges each and every allegation set forth in Paragraphs 1-7 and 9 of this Counterclaim, as if set forth fully herein.

67.    Kyjen has designed and marketed an entire series of distinctive toys, marketed under the name "Tennis Toys."  These toys are typically marketed by Kyjen collectively, as a set.

68.    The appearance of each of these toys, and the appearance of the collection of these toys, is distinctive and non-functional.  Because of the distinctive appearances and configurations of these toys, consumers and those in the pet trade have come to associate these toys uniquely with Kyjen. The appearance of these toys, and the appearance of the collection of these toys, have thus acquired secondary meaning and constitutes the valuable trade dress of Kyjen.

69.    At considerable expense, Kyjen has established a strong reputation in the marketplace and in the trade for high quality products.  That reputation is symbolized by and associated with Kyjen's trade dress.

70.    Pet Edge is manufacturing, marketing, distributing, and selling toys which infringe Kyjen's trade dress in its Tennis Toys.  In particular, Pet Edge is selling a collection of toys under the name "Feels Like Tennis" that incorporate Kyjen's trade dress.  Like Kyjen, Pet Edge typically sells these toys collectively, as a set.

13

71.    Because Pet Edge has copied Kyjen's trade dress, consumers and those in the trade are likely to believe mistakenly that Kyjen is the source of the infringing toys, or that Kyjen sponsors, endorses, or is otherwise affiliated with these toys.

72.    Pet Edge's conduct is not authorized by Kyjen.

73.    Pet Edge's infringing toys are of an inferior quality compared to Kyjen's toys. Kyjen's reputation for high quality pet products is thus threatened by Pet Edge's sales and the consumer confusion created by those sales.

74.    Kyjen is informed and believes that Pet Edge deliberately copied Kyjen's trade dress and that its infringement is willful.

75.    Pet Edge's conduct constitutes a violation of the Lanham Act, 15 U.S.C. § 1051, et seq.

76.    Pet Edge's infringement has caused damage to Kyjen.  In addition, Pet Edge's infringement has caused, and will continue to cause, irreparable harm to Kyjen, including continued harm to Kyjen's reputation, unless enjoined by this Court.

**Eighth Claim for Relief**

**(Trade Dress Infringement – H$_2$O Toys)**

77.    Kyjen realleges each and every allegation set forth in Paragraphs 1-7 and 9 of this Counterclaim, as if set forth fully herein.

78.    Kyjen has designed and marketed an entire series of distinctive toys, marketed under the name "H$_2$O Toys." These toys are typically marketed by Kyjen collectively, as a set.

79.    The appearance of each of these toys, and the appearance of the collection of these toys, is distinctive and non-functional.  Because of the distinctive appearances and configurations of these toys, consumers and those in the pet trade have come to associate these

14

toys uniquely with Kyjen. The appearance of these toys, and the appearance of the collection of these toys, have thus acquired secondary meaning and constitutes the valuable trade dress of Kyjen.

80.    At considerable expense, Kyjen has established a strong reputation in the marketplace and in the trade for high quality products. That reputation is symbolized by and associated with Kyjen's trade dress.

81.    Pet Edge is manufacturing, marketing, distributing, and selling toys which infringe Kyjen's trade dress in its $H_2O$ Toys. In particular, Pet Edge is selling a collection of toys under the name "Floating Zanies" that incorporate Kyjen's trade dress. Like Kyjen, Pet Edge typically sells these toys collectively, as a set.

82.    Because Pet Edge has copied Kyjen's trade dress, consumers and those in the trade are likely to believe mistakenly that Kyjen is the source of the infringing toys, or that Kyjen sponsors, endorses, or is otherwise affiliated with these toys.

83.    Pet Edge's conduct is not authorized by Kyjen.

84.    Pet Edge's infringing toys are of an inferior quality compared to Kyjen's toys. Kyjen's reputation for high quality pet products is thus threatened by Pet Edge's sales and the consumer confusion created by those sales.

85.    Kyjen is informed and believes that Pet Edge deliberately copied Kyjen's trade dress and that its infringement is willful.

86.    Pet Edge's conduct constitutes a violation of the Lanham Act, 15 U.S.C. § 1051, et seq.

87.    Pet Edge's infringement has caused damage to Kyjen. In addition, Pet Edge's infringement has caused, and will continue to cause, irreparable harm to Kyjen, including continued harm to Kyjen's reputation, unless enjoined by this Court.

## Ninth Claim for Relief

### (Trade Dress Infringement – Dispose-A-Bowl)

88.    Kyjen realleges each and every allegation set forth in Paragraphs 1-7 and 9 of this Counterclaim, as if set forth fully herein.

89.    Kyjen has designed and marketed a pet food bowl product under the name "Dispose-A-Bowl." This product has a unique cubical shape, unique translucent sides, and is available in three unique shades of orange, blue, and purple.

90.    The appearance of this product – including its shape, translucency, and the unique set of colors -- is distinctive and non-functional. Because of the distinctive appearances and configurations of this product, consumers and those in the pet trade have come to associate this product uniquely with Kyjen. The appearance of this product has thus acquired secondary meaning and constitutes the valuable trade dress of Kyjen.

91.    At considerable expense, Kyjen has established a strong reputation in the marketplace and in the trade for high quality products. That reputation is symbolized by and associated with Kyjen's trade dress.

92.    Pet Edge is manufacturing, marketing, distributing, and selling pet food bowls which infringe Kyjen's trade dress in its Dispose-A-Bowl bowls. In particular, Pet Edge is selling pet food bowls under the name "Fold-N-Go" that incorporate Kyjen's trade dress. These products are the same size and shape as Kyjen's Dispose-A-Bowl bowls, have the same degree of translucency, and are available in the same three shades of orange, blue, and purple.

93.    Because Pet Edge has copied Kyjen's trade dress, consumers and those in the trade are likely to believe mistakenly that Kyjen is the source of the infringing toys, or that Kyjen sponsors, endorses, or is otherwise affiliated with these toys.

94.    Pet Edge's conduct is not authorized by Kyjen.

95.    Pet Edge's infringing toys are of an inferior quality compared to Kyjen's toys. Kyjen's reputation for high quality pet products is thus threatened by Pet Edge's sales and the consumer confusion created by those sales.

96.    Kyjen is informed and believes that Pet Edge deliberately copied Kyjen's trade dress and that its infringement is willful.

97.    Pet Edge's conduct constitutes a violation of the Lanham Act, 15 U.S.C. § 1051, et seq.

98.    Pet Edge's infringement has caused damage to Kyjen.  In addition, Pet Edge's infringement has caused, and will continue to cause, irreparable harm to Kyjen, including continued harm to Kyjen's reputation, unless enjoined by this Court.

## Tenth Claim for Relief

### (Trade Dress Infringement – Port-a-Bowl)

99.    Kyjen realleges each and every allegation set forth in Paragraphs 1-7 and 9 of this Counterclaim, as if set forth fully herein.

100.    Kyjen has designed and marketed a pet food bowl product under the name "Port-a-Bowl." This product has a unique truncated pyramidal shape and is available in three specific shades of red, blue, and black.

101.    The appearance of this product – including its shape and the unique set of colors -- is distinctive and non-functional.  Because of the distinctive appearances and configurations of

this product, consumers and those in the pet trade have come to associate this product uniquely with Kyjen. The appearance of this product has thus acquired secondary meaning and constitutes the valuable trade dress of Kyjen.

102. At considerable expense, Kyjen has established a strong reputation in the marketplace and in the trade for high quality products. That reputation is symbolized by and associated with Kyjen's trade dress.

103. Pet Edge is manufacturing, marketing, distributing, and selling pet food bowls which infringe Kyjen's trade dress in its Port-a-Bowl bowls. In particular, Pet Edge is selling pet food bowls under the name "Guardian Gear Waterproof Travel Bowl" that incorporate Kyjen's trade dress. These products are the same size and shape as Kyjen's Port-a-Bowl bowls, and are available in the same three shades of red, blue, and black.

104. Because Pet Edge has copied Kyjen's trade dress, consumers and those in the trade are likely to believe mistakenly that Kyjen is the source of the infringing toys, or that Kyjen sponsors, endorses, or is otherwise affiliated with these toys.

105. Pet Edge's conduct is not authorized by Kyjen.

106. Pet Edge's infringing toys are of an inferior quality compared to Kyjen's toys. Kyjen's reputation for high quality pet products is thus threatened by Pet Edge's sales and the consumer confusion created by those sales.

107. Kyjen is informed and believes that Pet Edge deliberately copied Kyjen's trade dress and that its infringement is willful.

108. Pet Edge's conduct constitutes a violation of the Lanham Act, 15 U.S.C. § 1051, et seq.

109.    Pet Edge's infringement has caused damage to Kyjen. In addition, Pet Edge's infringement has caused, and will continue to cause, irreparable harm to Kyjen, including continued harm to Kyjen's reputation, unless enjoined by this Court.

## Eleventh Claim for Relief

### (Unfair Competition)

110.    Kyjen realleges each and every allegation set forth in Paragraphs 1-109 of this Counterclaim, as if set forth fully herein.

111.    The acts set forth above constitute unfair competition in violation of the Lanham Act, and the laws and common law of the State of California and the Commonwealth of Massachusetts.

112.    Kyjen is informed and believes that the conduct of Pet Edge has been willful, deliberate, oppressive, and malicious.

113.    Pet Edge's conduct has caused Kyjen financial harm and irreparable harm, and will not cease unless enjoined by this Court.

WHEREFORE, Kyjen prays for relief as follows:

A.    That Pet Edge take nothing on its Complaint, and that its Complaint be dismissed with prejudice.

B.    That Kyjen's federal copyright registration Nos. VA 999-576, VA 1-015-297, VA 1-248-235, and VA 1-248-236 be held valid and infringed by Pet Edge in violation of 17 U.S.C. § 501 et seq.

C.    That Pet Edge be held to have willfully infringed Kyjen's copyrights.

D.    That Kyjen's "Bungee" and "Bungees" trademarks be held valid and infringed by Pet Edge in violation of the Lanham Act, 15 U.S.C. § 1051, et seq.

E.    That Pet Edge be held to have willfully infringed Kyjen's "Bungee" and "Bungees" trademarks.

F.    That Pet Edge be held to have infringed Kyjen's trade dress in its Tug 'N Ring series of toys, its Tennis Toys, its $H_2O$ toys, its Dispose-a-Bowl bowls, and its Port-a-Bowl bowls.

G.    That Pet Edge be held to have engaged in unfair competition.

H.    That Pet Edge, its officers, agents, servants, employees, and attorneys, and all those persons in active concert or participation with them who receive actual notice of the injunction, be enjoined and restrained during the pendency of this action and permanently thereafter, from (a) copying, reproducing, creating derivative works of, distributing, displaying, using, marketing or selling copies of Kyjen's copyrighted pet toys or any other substantially similar variation of Kyjen's copyrighted pet toys in any manner; and (b) otherwise infringing Kyjen's copyrights.

I.    That Pet Edge be required to deliver up for destruction all pet toys found to infringe Kyjen's copyrights in its pet toys in Pet Edge's inventory, as well as any materials, literature, advertisements and any other things embodying Kyjen's copyrights.

J.    That Pet Edge be required to cease manufacturing and/or subcontracted manufacturing of all infringing toys.

K.    That Pet Edge, its officers, agents, servants, employees, and attorneys, and all those persons in active concert or participation with them who receive actual notice of the injunction, be enjoined and restrained during the pendency of this action and permanently thereafter, from manufacturing, distributing, displaying, marketing or selling toys or other

products which infringe Kyjen's trade dress in its Tug 'N Ring series of toys, its Tennis Toys, its H2O toys, its Dispose-a-Bowl bowls, and its Port-a-Bowl bowls.

L.    That Pet Edge, its officers, agents, servants, employees, and attorneys, and all those persons in active concert or participation with them who receive actual notice of the injunction, be enjoined and restrained during the pendency of this action and permanently thereafter, from using the mark "Bungee" or "Bungees," or any other mark confusingly similar thereto.

M.    That Pet Edge be required to file with the Court and serve on Kyjen, within 30 days after service of the injunction, a written report under oath setting forth in detail the manner and form in which Pet Edge complied with the Court's Order.

N.    That Pet Edge be ordered to pay over to Kyjen all damages which Kyjen has sustained as a consequence of the acts complained of herein, and disgorge all profits unlawfully obtained by reason of the acts alleged herein.

O.    That such damages and profits be trebled and awarded to Kyjen pursuant to 15 U.S.C. § 1117.

P.    That Pet Edge be ordered to pay over to Kyjen statutory damages in accordance with the Copyright Act.

Q.    That Kyjen be awarded punitive damages in accordance with the laws of California and Massachusetts.

R.    That Kyjen recover its attorneys' fees pursuant to 17 U.S.C. § 505, 15 U.S.C.§ 1117, and other appropriate provisions of law.

S.    That Kyjen be awarded its costs;

T.     That Kyjen be awarded such other and further relief as the Court deems just and

proper.

**JURY DEMAND**

**COUNTERCLAIM PLAINTIFF DEMANDS A TRIAL BY JURY
ON ALL CLAIMS SO TRIABLE**

Dated:  July 21, 2004

> Respectfully submitted,
>
> THE KYJEN COMPANY, INC.
> By its attorneys,
>
> _____
> Paul Holtzman, Esq.
> BBO No. 563184
> KROKIDAS & BLUESTEIN LLP
> 600 Atlantic Avenue
> Boston, MA  02111
> Telephone:  (617) 482-7211
> Facsimile:  (617) 482-7212

Of Counsel
Paul A. Stewart, *Pro Hac Vice Admission Pending*
KNOBBE, MARTENS, OLSON & BEAR
2040 Main Street, 14th Floor
Irvine, CA  92614
Telephone: (949) 760-0404
Facsimile:  (949) 760-9502

**CERTIFICATE OF SERVICE**

I, Paul Holtzman, hereby certify that on the above date I arranged for service of a copy of the within Answer and Counterclaims, via hand delivery, on Kirk Teska, Esq., Landiorio & Teska, 260 Bear Hill Road, Waltham, MA 02451.

> _____
> Paul Holtzman, Esquire

2144\0001\141806.1